IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                          Criminal No. 3:16cr6-01

DAVID DEWAYNE JACKSON

### MEMORANDUM OPINION

This matter is before the Court on the defendant's *pro se* Letter Motion for Compassionate Release (ECF No. 107), the MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) WITH MEMORANDUM OF LAW (ECF No. 121), and the United States' Response in Opposition to Defendant's Motion for Compassionate Release (ECF No. 129). The time for filing a reply has expired and no reply was filed. For the reasons set forth below, the defendant's *pro se* Letter Motion for Compassionate Release (ECF No. 107) and the MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) WITH MEMORANDUM OF LAW (ECF No. 121) will be denied.

### BACKGROUND

David D. Jackson was charged in a three count Indictment. He pled guilty to Count One, carjacking, in violation of 18 U.S.C. § 2119, and to Count Two, using, carrying, possessing or brandishing a firearm during and in relation to, and in furtherance of, a crime

of violence, in violation of 18 U.S.C. §§ 924(c) and (2). Following sentencing, Count Three, possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) was dismissed.

According to the Statement of Facts, Jackson and several co-conspirators took a 2013 Ford Lincoln SUV from a victim by force, violence, and intimidation with the intent to cause death and serious bodily harm. In the course of doing that, the defendants used and carried firearms and brandished them during, and in relation to, and in furtherance of that crime of violence, all in violation of 18 U.S.C. § 924(c). In particular, Jackson and his co-conspirators followed the victim, a 61-year old woman. When the victim stopped the car in a driveway, Jackson confronted her with a .40 caliber pistol and demanded the keys to the vehicle. He then drove the woman's 2013 Lincoln SUV away. The other conspirators followed in another car.

Law enforcement officers was alerted to the incident by way of a 911 call and attempted to stop the two vehicles. After the carjacked vehicle was stopped, Jackson and another defendant fled on foot but were located approximately an hour later. Jackson confessed to the offense after having been properly warned of his rights.

According to the Presentence Report, the total offense level for the two offenses of conviction was 19. Jackson had a Criminal

History Category of V. The guideline provisions for Count One were 57 to 71 months (with a statutory maximum of 15 years) and the statutory provision for Count Two was confinement for a period of seven years to be served consecutively. Jackson was sentenced to a term of imprisonment of 141 months consisting of 57 months on Count One and a term of 84 months on Count Two, to be served consecutively to the sentence on Count One. (Judgment in a Criminal Case, ECF No. 87).

Jackson is serving his sentence at USP Coleman I (inmate population of 1,304) where he has served approximately 66 months of the imposed sentence. At the time that Jackson filed his motion for compassionate release, there were no current cases of COVID-19 reported in the inmates or staff populations of USP Coleman I. The record reflects that 108 inmates and 56 staff members at the facility previously have been diagnosed with COVID-19 and have recovered satisfactorily.

Jackson contends that he "could be more likely to get severely ill from COVID-19" as the starting point for his basis for his motion for compassionate release. That, according to Jackson, is because of a CDC report that states that "'[long]-standing systemic health and social inequities have put people from many racial and ethnic minority groups at increased risk of getting sick and dying from COVID-19.'" (ECF No. 121, p. 10). Jackson then mentions

"substance use disorder" as an underlying medical condition that can increase the likelihood of severe illness from COVID-19 if it is contracted. Then he argues that he has "had an inguinal hernia for several years that causes him such severe pain that he requested a bottom bunk in 2019 so it would be easier for him to get into bed." (Id. as 12-13). A doctor has recommended surgery but that has not occurred yet. Finally, Jackson alleges that he suffers with untreated medical issues. (Id. at 13). On that basis he seeks compassionate release.

## DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). United States v. White, 378 F. Supp.3 784, 785 (W.D. Mo. 2019).

The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the Bureau of Prison's statutory role, and extensive professional efforts to curtail the virus' spread. United States

v. Raia, 954 F.3d 594, 597 (3rd Cir. 2020). In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, inter alia, the guidance of the CDC, and non-binding policy statements of the United States Sentencing Guidelines. See United States v. Beck, 425 F. Supp. 3d 573, 581-82 (M.D.N.C. 2019). The policy statements are not binding but are informative and may be considered. United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020). The cases teach that, to constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious. Also, it is generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020).

To establish existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19, the defendant must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at [his] prison facility." United States v. Feiling, 453 F. Supp.3d 832, 840 (E.D. Va. 2020); United States v. White, ___ F. Supp.3d ___, 2020 WL 1906845, at *1 (E.D. Va. April 23, 2020)

5

1. Particularized Susceptibility

Jackson has established that he suffers from an inguinal hernia. That is not on the CDC list of conditions that can be worsened or made more severe if COVID-19 is contracted. Jackson also claims that he has "substance abuse disorder" which is recognized as a risk factor for increased health problems if COVID-19 is contracted. Jackson also claims to suffer from bipolar disorder.

However, the fact that a defendant has established a higher susceptibility to COVID-19 does not resolve the particularized susceptibility requirement because identified risk factor conditions must be serious to constitute extraordinary and compelling reasons. It appears from the record that the conditions on which Jackson bases his motion are "chronic conditions that can be managed in prison [and thus] are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020). In addition, Jackson has not actually established that he suffers from substance abuse disorder or from bipolar disorder.

Jackson argues that, because he is African-American, he is more vulnerable to COVID-19. That, in reality is an argument that COVID-19 pandemic has affected the African-American and other minority populations disproportionately. Without definitive

6

proof, it is fair to say that general reports of the impacts of COVID-19 tend to bear out that assertion. However, notwithstanding the disproportionate impact, it is also true that a defendant's race "does not constitute a risk factor for COVID-19 in the same way an underlying medical condition does." United States v. Jackson, No. 05-20018-01-JWL, 2020 WL 5231317, at *3 (D. Kan. Sept. 2, 2020). Indeed, there is really no support for the proposition that "race," qua race, increases the person's risk for contracting COVID-19 or experiencing severe illness if it is contracted. As the Government argues, there seems to be a consensus emerging that racial and ethnic disparities in the rates of contracting, and in the adverse outcome of, COVID-19 most likely are attributable to "social determinants of health" that "have historically prevented" minority groups "from having fair opportunities for economic, physical, and emotional health." Health Equity Considerations and Racial and Ethnic Minority Groups, CDC (Apr. 19, 2021), https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcorona-virus%2F2019-ncov%2Fneed-extra-precautions%2Fracial-ethnic-minorities.html. Put another way, as the Court held in United States v. Dimkpa, "[w]hile ethnic minority groups may be more affected by the coronavirus pandemic, current evidence suggests a

correlation, not causation." United States v. Dimkpa, No. 1:19cr443, 2020 WL 4754901, at *2 (M.D.N.C. Aug. 17, 2020)

For those reasons, most courts have decided that race, qua race, is not an extraordinary and compelling reason for compassionate release. United States v. Leigh-James, No. 3:15cr188 (SRU), 2020 WL 4003566, at *8 (D. Conn. July 15, 2020) (collecting cases); United States v. Wilson, No. CCB-14-334, 2020 WL 4286873, at *2 (D. Md. July 27, 2020).

In April 2021, Jackson was offered the Pfizer-BioNTech vaccine and refused it. The vaccine has proven effective in reducing the risk of contracting COVID-19 and the risk of serious consequences if it should be contracted. Refusal to accept a highly effective vaccine further militates against a finding that Jackson is entitled to release. Indeed, it has been held that "refusal to take preventative measures against COVID-19 substantially undermines [a defendant's] assertion that extraordinary and compelling reasons exist to warrant his release from prison." United States v. Madison, No. 2:17-cr-80, ECF No. 88 (E.D. Va. March 19, 2021). See also United States v. King, No. 16-cr-478-11 (CS), 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021); United States v. McBride, No. 5:19-cr-7-KDB-DCK-1, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021).

In sum, Jackson has not met the particularized susceptibility risk facet of the applicable test.

2.  **Particularized Facility Risk**

Nor has Jackson met the particularized facility risk component of the appropriate test. His motion cites press releases and information respecting the instances of COVID-19 among inmates and staff at BOP facilities nationwide, but provides no real evidentiary support of a particularized risk of contracting the disease at USP Coleman I, the defendant's facility of incarceration. Further, the record reflects that, at the time of the filing of the motion and the Government's papers, USP Coleman I had no active cases of COVID-19 among inmates, no active cases of COVID-19 among staff, and 108 inmates and 56 staff members who had previously recovered from COVID-19.

On this record, Jackson has not met the particularized facility component of the applicable test.

3.  **Assessment Under 18 U.S.C. § 3553(a)**

But, even if Jackson had met the particularized risk assessment and the particularized facility assessment (which he has not), it would be appropriate to deny compassionate release in perspective of the sentencing factors prescribed by 18 U.S.C. § 3553(a). Compassionate release, of course, is appropriate only where the defendant is not a danger to the safety of any other person or of

9

the community. Jackson has made no direct argument addressed to danger. Rather, he argues that he has taken several educational courses and has committed only three infractions of prison rules, all of which were "non-violent." That does not satisfy Jackson's burden to prove that he is not a danger to the community particularly where, as here, his Criminal History Category is V and the offense of conviction was a violent one.

The offense of conviction and the manner of its commission was extremely serious. The defendant's history and characteristics do not augur in favor of compassionate release considering his Criminal History Category of V. Jackson's principal argument under § 3553 is that his post-offense development and the fact that he has served approximately 55% of his sentence during a pandemic, when considered together with the educational courses that he has taken, warrant compassionate release.

The record reflects that Jackson has done very little to support a finding of significant effort toward rehabilitation. Further, he has a history of 13 violations of prison rules through October 2020 and a subsequent violation (a serious one in November 2020) and two in 2021.

On this record, there is no basis to find that Jackson has been rehabilitated or that his efforts toward rehabilitation are

10

sufficient to warrant a compassionate release. And, a consideration of the § 3553(a) factors, especially the nature and consequences of the offense of conviction, Jackson's criminal history, the need to protect the public and to deter the defendant, warrants a finding that the current sentence is appropriate and that none of the § 3553(a) factors support compassionate release.

## CONCLUSION

For the foregoing reasons, the defendant's *pro se* Letter Motion for Compassionate Release (ECF No. 107) and the MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) WITH MEMORANDUM OF LAW (ECF No. 121) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 20, 2022

11